UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JONATHAN PADILLA, Plaintiff, | ) | |
| v. | ) | No. 4:23-cv-00170-SEB-KMB |
| HUGO DIAZ, et al., Defendants. | ) | |

**REPORT AND RECOMMENDATION FROM DAMAGES HEARING**

*Pro se* Plaintiff Jonathan Padilla brought this action against Defendants Hugo Diaz and Huge Music Group, LLC ("Huge Music Group"), alleging that he provided funds and equipment for a recording studio but did not receive the payments promised under the Parties' agreements. After Huge Music Group failed to respond or otherwise defend this action, the District Judge granted default judgment as to liability on Mr. Padilla's breach of contract and account stated claims as to Huge Music Group and designated the undersigned Magistrate Judge to conduct a hearing and recommend an appropriate damages award. [Dkt. 44.] The Court denied Mr. Padilla's Motion for Default Judgment against Mr. Diaz. [*Id.*] Thus, this Report and Recommendation addresses only the damages to be awarded against Huge Music Group pursuant to the Court's Order issued on February 27, 2026.

The undersigned held a hearing in New Albany on September 23, 2026. [Dkt. 65.] Mr. Padilla appeared in person. Neither Defendant Hugo Diaz nor counsel for Defendant Huge Music Group appeared. Mr. Padilla's witness, Jose Marti, also appeared. The Court took the matter under advisement and stated it would issue a decision in due course. [Dkt. 65.] A transcript from the hearing was filed on October 6, 2026. [Dkt. 68.]

## I. LEGAL STANDARD

Upon default, the well-pleaded allegations of a complaint relating to liability are accepted as true, but allegations concerning the amount of damages are not. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016); *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Rather, a plaintiff must establish his entitlement to the damages he seeks. *In re Catt*, 368 F.3d at 793. When those damages are neither liquidated nor capable of ascertainment from definite figures in documentary evidence or detailed affidavits, an evidentiary hearing is necessary. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). At the hearing, evidence may be presented to support a damages request, and that evidence is evaluated to ascertain the appropriate award with reasonable certainty. *In re Catt*, 368 F.3d at 793. Any award must also comply with Federal Rule of Civil Procedure 54(c), which provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## II. RECOMMENDED FINDINGS OF FACT

Based on the testimony and exhibits admitted at the hearing, together with the relevant record, the undersigned Magistrate Judge now recommends the following findings of fact.

Huge Music Group is a limited liability company whose sole member is Mr. Diaz. [Dkt. 14 at ¶¶ 3-4.] Its business included producing music and building recording studios. [*Id.* at ¶ 10.] Mr. Padilla provided funds, equipment, and labor for a recording studio located at 520 South Fourth Street, Suite 250, in Louisville, Kentucky. [Dkt. 67 at 14-16, 25-26.]

### A. The First Agreement: Repayment and Interest

On October 30, 2019, Mr. Padilla and Huge Music Group entered into a financing agreement (the "First Agreement"). [Dkt. 14-1.] Mr. Padilla signed as the lender, and Mr. Diaz

signed on behalf of Huge Music Group as the borrower. [*Id.*] Mr. Padilla provided $20,000 to Huge Music Group under the First Agreement. [Dkts. 14 at 67; 14 at 4 ¶ 40.]

The First Agreement tied the total repayment amount to when Huge Music Group repaid Mr. Padilla's $20,000 investment. Specifically, Huge Music Group agreed to pay a total of $35,000 if repayment occurred by November 1, 2020; $40,000 if repayment occurred by November 1, 2021; and $45,000 if repayment occurred by November 1, 2022. [Dkt. 14-1 at 1.] These amounts included the original investment and the promised return. [*Id.*] The First Agreement further provided that, after November 2, 2023, the outstanding amount would accrue interest at 15% per year. [*Id.*] The First Agreement provided that once the loan was paid in full, Mr. Padilla would receive 5% of Huge Music Group's net profits for eight years. [*Id.*] Huge Music Group also agreed to provide certain music production, branding, and marketing services. [*Id.*]

Mr. Padilla received no repayment under the First Agreement. [Dkt. 67 at 14-15.] He therefore requests $45,000 pursuant to its repayment schedule, plus $18,832.50 in accrued interest. [Pl.'s Hr'g Ex. 14 at 1.][1] Mr. Padilla calculated the interest by applying the 15% annual rate to $45,000 and multiplying the resulting annual interest of $6,750 by approximately 2.79 years, representing the period from November 2, 2023, through August 18, 2026. [*Id.*] Although Mr. Padilla described that figure at the hearing as extending through the hearing date, his written calculation ends on August 18, 2026. [Dkt. 67 at 14-15.] Thus, his requested repayment and interest under the First Agreement total $63,832.50. [Pl.'s Hr'g Ex. 14 at 1.]

---

[1] At the hearing, the Court admitted Mr. Padilla's fourteen exhibits into evidence. [Dkts. 65 at 2; 65-1 (exhibit list).] For clarity of the record and this decision, by separate entry to be issued today, the Court will also docket those exhibits.

**B. The Second Agreement**

As explained in Sections III.C and III.D below, the undersigned recommends that Mr. Padilla be awarded no recovery under the Second Agreement because the requested damages fall outside the scope of Huge Music Group's established liability as pled in the Third Amended Complaint, which is the operative pleading. The undersigned nevertheless summarizes the testimony and exhibits concerning the Second Agreement to provide a complete account of Mr. Padilla's damages requests and the evidence presented at the hearing.

At the hearing, Mr. Padilla introduced a second financing agreement concerning the Louisville studio (the "Second Agreement"). [Pl.'s Hr'g Ex. 2.] The introductory language in the Second Agreement identifies the agreement as between Mr. Diaz and Mr. Padilla, while the signature block identifies "Huge Music Group, LLC—Hugo Diaz (Borrower)." [*Id.*] The Second Agreement provided that Mr. Padilla would invest $25,000 in cash or equipment, together with funds needed for the studio's material buildout, and would receive fifty percent of all revenue generated by the studio. [*Id.*] It stated that "this agreement is in addition to prior agreements." [*Id.*]

**1. Expenditures**

Mr. Padilla testified at the hearing that he provided funds, equipment, labor, and resources under the Second Agreement. [Dkt. 67 at 15-16.] In support of this, Mr. Padilla submitted an itemized summary of expenditures he attributed to the Second Agreement totaling $49,976.04. [Pl.'s Hr'g Ex. 4.] A copy of the summary that Mr. Padilla provided at the hearing is reproduced below for ease of reference:

| **Item** | **Cost** |
|---|---|
| Neuman TLM Microphone | 1280.67 |

| **Item** | **Cost** |
|---|---|
| JBL EON Subwoofer | 869.12 |
| Behringer NX4-6000 Amplifier | 548.99 |
| Mackie Thump18S 1200W Subwoofer | 699.99 |
| Slate Media MTi Core Station Side Car – Pair | 999 |
| Yamaha HS8 8-inch Studio Monitor - White | 349.99 |
| Yamaha HS8 8-inch Studio Monitor - White | 349.99 |
| Yamaha HS8S 8-inch Studio Subwoofer | 449.99 |
| AKG C414 XLII Condenser Microphone | 799 |
| Universal Audio Apollo 8 QUAD Audio Interface | 2099 |
| RAVEN MTi CORE Station | 2999 |
| Apple Mac Pro (Late 2013) 3.5GHz 6-Core, 32GB | 1,656.88 |
| Genelec 1033A 1990 | 7102 |
| Digidesign Icon D Command Control 32 Fader | 12772.42 |
| Digidesign Icon D Shipping from Europe | 5000 |
| Materials (drywall, flooring, lighting, electrical etc) | 7000 |
| Labor | 5000 |
| | **49976.04** |

To demonstrate how Mr. Padilla reached these figures, he submitted five exhibits documenting several equipment purchases. [Pl.'s Hr'g Exs. 5-9, *see also* dkt. 41-1.] The purchase records reflect a JBL EON subwoofer for $869.12; a Neumann TLM microphone for $1,280.67; a Behringer NX4-6000 amplifier for $548.99; a Mackie Thump18S subwoofer for $699.99; a pair of Slate Media MTi Core Station side cars for $999; two white Yamaha HS8 studio monitors for $349.99 each; a Yamaha HS8S studio subwoofer for $449.99; an AKG C414 XLII condenser

microphone for $799; a Universal Audio Apollo 8 QUAD audio interface for $2,099; and a RAVEN MTi CORE Station for $2,999. [*Id.*] They also reflect an Apple Mac Pro for $1,656.88, a Genelec monitor for $7,102, and a Digidesign mixing console for $12,777.42.[2] [*Id.*]

These records span November 2019 through May 2022, with several purchases predating the Second Agreement. Neither these five exhibits nor the remainder of the record separately documents the $5,000 in shipping costs, $7,000 in materials, or $5,000 in labor listed in Mr. Padilla's expenditure summary. [Pl.'s Hr'g Ex. 4.]

Mr. Padilla testified that he had not been reimbursed for these expenditures and requests that the Court award him recovery of the $49,976.04 listed in his summary. [Dkt. 67 at 15-16; Pl.'s Hr'g Ex. 14 at 2.] Mr. Marti, Mr. Padilla's witness at the hearing, corroborated that Mr. Padilla provided equipment and participated in the studio's buildout. [Dkt. 67 at 25-26.]

**2. Revenue Sharing**

Mr. Padilla also seeks a 50% share of studio revenue under the Second Agreement. [Pl.'s Hr'g Ex. 14 at 2.] He testified that the studio operated and generated revenue before ceasing operations following issues involving its landlord, but that he never received his share. [Dkt. 67 at 16-17.]

Mr. Marti, who managed the studio's daily operations, testified regarding its customers, revenue, and payment practices. His responsibilities included booking clients, recording artists, collecting payments, and paying bills at Mr. Diaz's direction. [*Id.* at 18-20.] According to Mr. Marti, the studio was generally booked approximately twenty hours per day, seven days per week,

---

[2] The documented purchase price of the Digidesign mixing console is $5 greater than the amount listed in Mr. Padilla's expenditure summary. *Compare* Pl.'s Hr'g Ex. 9, *with* Pl.'s Hr'g Ex. 4. This difference does not affect the recommended award because, as explained below, the undersigned recommends no recovery under the Second Agreement.

at a base rate of $60 per hour, although it also offered package rates. [*Id.* at 21-22.] He recalled reviewing the studio's books and observing approximately $5,000 in revenue for one week he worked. [*Id.* at 27.]

Customers paid by cash, Cash App, or Venmo. [*Id.* at 22.] Mr. Marti sometimes deposited customer payments into the studio's business account at Chase Bank. [*Id.*] At other times, he gave the money to Mr. Diaz, who deposited it into his own account and stated that he would transfer it to the business account. [*Id.*] Mr. Marti maintained records through QuickBooks but could not see all transactions in Mr. Diaz's personal account. [*Id.* at 24.] Mr. Diaz had discussed a revenue-sharing arrangement with Mr. Padilla, but Mr. Marti never made payments to Mr. Padilla and was unaware of him receiving payments from studio revenue. [*Id.* at 26.]

Mr. Padilla submitted bank records that, according to his testimony, reflect studio revenue flowing through accounts controlled by Mr. Diaz. [Pl.'s Hr'g Ex. 11; dkt. 67 at 16-17.] He testified that he lacked access to those accounts. [Dkt. 67 at 17.] His written damages summary estimated weekly gross revenue of approximately $1,000 to $2,000 during active operations. [Pl.'s Hr'g Ex. 14 at 2.] His revenue-sharing request nevertheless remains more amorphous than his other requests: he did not specify a total award or a defined period for calculating his fifty-percent share. [*Id.*; dkt. 67 at 30-31.]

## III. RECOMMENDED CONCLUSIONS OF LAW

The Court has already established Huge Music Group's liability on Mr. Padilla's breach of contract and account stated claims. [Dkt. 44 (Order on Plaintiff's Motion for Default Judgment).] The undersigned now recommends the following conclusions regarding which of Mr. Padilla's requested damages fall within the scope of that liability and are supported by the evidence.

Under Indiana law, contract damages compensate the injured party for the benefit of the bargain, and recoverable losses must be the natural, foreseeable, and proximate consequence of the breach. *See Berkel & Co. Contractors, Inc. v. Palm & Assocs., Inc.*, 814 N.E.2d 649, 658-59 (Ind. Ct. App. 2004). An account stated claim requires an agreement that the account's items and balance are correct, together with an express or implied promise to pay that balance. *Sollers Point Co. v. Zeller*, 145 N.E.3d 790, 799–800 (Ind. Ct. App. 2020). Agreement may be inferred from delivery of a statement and the debtor's failure to object within a reasonable time. *Id.* Although liability has been established on both claims, Mr. Padilla may recover only once for the same unpaid obligation. *See INS Investigations Bureau, Inc. v. Lee*, 784 N.E.2d 566, 577 (Ind. Ct. App. 2003) ("a party may not recover twice for the same wrong").

Mr. Padilla seeks repayment and interest under the First Agreement, reimbursement of expenditures attributed to the Second Agreement, and a share of studio revenue under the Second Agreement. The undersigned recommends the following conclusions regarding each request.

**A. Repayment Under the First Agreement**

Mr. Padilla seeks $45,000 under the First Agreement's repayment schedule. The Court previously determined that Huge Music Group breached the First Agreement by failing to repay Mr. Padilla or fulfill its other contractual obligations, but it reserved the amount of damages for determination following an evidentiary hearing. [Dkt. 44 at 7-10.]

The First Agreement identifies Huge Music Group as the borrower and provides for total repayment of $45,000 by November 1, 2022. [Dkt. 14-1 at 1.] At the hearing, Mr. Padilla testified that he provided the agreed $20,000 and received no repayment. [Dkt. 67 at 14-15.] Because the full $45,000 remains unpaid and is ascertainable from the agreement's express terms, the undersigned recommends an award in that amount. *See Schregardus v. Dynamic Extrusion, LLC*,

2025 WL 887359 at *2 (S.D. Ind. Mar. 20, 2025) (awarding the unpaid repayment amounts established by the parties' promissory notes).

The Court also previously established Huge Music Group's liability on Mr. Padilla's account stated claim. [Dkt. 44.] In doing so, the Court considered his allegations that he delivered a January 16, 2023, statement identifying a $50,000 balance and that Huge Music Group did not object, concluding that "[t]hese facts are sufficient to make a *prima facie* case on an account stated." [*Id.* at 9.] That ruling did not, however, establish Mr. Padilla's entitlement to a $50,000 damages award. The Court separately explained that, although allegations relating to liability are accepted as true, "damages must be proven to a 'reasonable certainty,'" expressly granting default judgment only "as to liability." [*Id.* at 9, 11.] The amount recoverable therefore remained for determination following the evidentiary hearing.

At the hearing, Mr. Padilla identified $45,000 as the repayment amount due under the First Agreement, which is consistent with his written damages summary, and he did not explain the additional $5,000 reflected in the earlier statement. [Dkt. 67 at 14-15; Pl.'s Hr'g Ex. 14 at 1.] Additionally, Mr. Padilla cannot recover the same damages under both his breach of contract and account stated claims. *See INS Investigations Bureau*, 784 N.E.2d at 577. The undersigned therefore concludes that based on the evidence presented at the hearing, a single recovery of $45,000 for the unpaid repayment obligation is warranted. *See Bulk Transport Corp. v. FE Rail, LLC*, 2023 WL 8433513, at *3 (N.D. Ind. Dec. 4, 2023) (dismissing an account stated claim as moot because it sought relief already granted on the breach of contract claim). Thus, the undersigned recommends that judgment be entered in the amount of $45,000 in favor of Mr. Padilla on his remaining claims against Huge Music Group.

**B. Interest Under the First Agreement**

Mr. Padilla also seeks contractual interest on the unpaid repayment amount under the First Agreement. "In diversity actions such as this case, a federal court must look to state law to determine the propriety of awarding prejudgment interest . . . ." *Travelers Ins. Co. v. Transport Ins. Co.*, 846 F.2d 1048, 1051 (7th Cir. 1988) (applying Indiana law). Indiana law recognizes the appropriateness of compensating injured parties for their "lost use of money," especially when this figure is easy to compute. *See Town of New Ross v. Ferretti,* 815 N.E.2d 162, 169 (Ind. Ct. App. 2004) ("An award of pre-judgment interest in a breach of contract action is warranted if the amount of the claim rests upon a simple calculation and the terms of the contract make such a claim ascertainable.") (citation and internal quotations omitted). Specifically, "[t]he test for determining whether an award of pre-judgment interest is appropriate is whether the damages are complete and may be ascertained as of a particular time." *Id.* at 169-70. An award of pre-judgment interest is not generally considered a matter of discretion. *Erie-Haven v. Tippmann Refrigeration Const.*, 486 N.E.2d 646, 649 (Ind. Ct. App. 1985). Indiana law states that the prejudgment interest rate must ordinarily be between 6% and 10% per year. Ind. Code Ann. § 34-51-4-9. However, the statutory pre-judgment interest rate is inapplicable where the parties agreed upon the interest rate to be charged in the event of a default. *See Hedrick v. First Nat'l Bank & Trust Co.*, 482 N.E.2d 1146, 1149-50 (Ind. Ct. App. 1985).

The First Agreement provides that, after November 2, 2023, the outstanding amount begins accruing interest at 15% per year. [Dkt. 14-1 at 1.] Because Huge Music Group made no payments, the undersigned recommends that 15% interest accrue on the full $45,000 repayment obligation, yielding $6,750 annually. The First Agreement's use of "after November 2, 2023" places the first day of accrual on November 3, 2023.

Mr. Padilla calculated $18,832.50 in accrued interest by multiplying $6,750 by approximately 2.79 years. [Pl.'s Hr'g Ex. 14 at 1.] Although he described that amount as extending through the hearing, his written calculation covered November 2, 2023, through August 18, 2026. [Dkt. 67 at 14-15; Pl.'s Hr'g Ex. 14 at 1.] He also requested additional interest. [Dkt. 67 at 31.] The undersigned therefore recommends that the award should reflect the actual contractual accrual period through entry of judgment, rather than the rounded period used in his summary.

Accordingly, the undersigned recommends simple prejudgment interest on $45,000 at 15% annually beginning November 3, 2023, through entry of judgment, with the total amount to be calculated as of that date.

**C. Expenditures Attributed to the Second Agreement**

Mr. Padilla seeks an additional $49,976.04 for equipment, shipping, materials, and labor attributed to the Second Agreement. The undersigned recommends concluding that this request extends beyond the contractual liability established against Huge Music Group in the operative Third Amended Complaint that was the subject of the Court's Order granting default judgment. [Dkt. 44.] Although the operative Third Amended Complaint references the Second Agreement, it does not contain a separate claim for breach of contract as to the Second Agreement. Indeed, the Court's previous determination that Huge Music Group was liable for breach of contract rested exclusively on the First Agreement. [Dkt. 14 at ¶¶ 24-26, 47-51; dkt. 44 at 7-8.] The Court did not separately establish Huge Music Group's liability for breach of contract under the Second Agreement.

After the Court's entry of default judgment on the breach of contract and accounts stated claims that Mr. Padilla pled in the Third Amended Complaint, Mr. Padilla moved for leave to file a Fourth Amended Complaint. [Dkt. 55.] His proposed pleading included revised allegations

concerning the Second Agreement, and this time he attached a copy of the same. [Dkt. 55-1 at 4-5, ¶¶ 24-31; *id*. at 24-25.] At the hearing, the undersigned denied leave to amend, explaining that Mr. Padilla "had already had the opportunity to amend his pleadings multiple times, that he had chosen to pursue default judgment on his Third Amended Complaint as the operative pleading, and that the scope of the hearing was related to potential damages on the claims on which the Court had already entered default judgment in favor of Mr. Padilla on the Third Amended Complaint." [Dkts. 65; 67 at 6-9.] Thus, the Third Amended Complaint remains the operative pleading for purposes of the hearing and this Report and Recommendation.[3]

The copy of the Second Agreement admitted at the hearing identifies Huge Music Group in its signature block. [Pl.'s Hr'g Ex. 2.] Its admission into evidence for purposes of the damages hearing does not, however, amend the allegations of the Third Amended Complaint or expand the liability determination underlying the damages proceeding. Federal Rule of Civil Procedure 54(c) provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The undersigned limits the recommended damages award to the contractual liability established against Huge Music Group under the Third Amended Complaint. Accordingly, the undersigned does not recommend an additional award against Huge Music Group for expenditures attributed to the Second Agreement because those are outside the scope of the default judgment entered by the Court.

**D. Revenue Sharing Under the Second Agreement**

Mr. Padilla also seeks 50% of the studio's revenue under the Second Agreement. [Pl.'s Hr'g Ex. 14 at 2.] That request based on the Second Agreement likewise falls outside the scope of the

[3] The undersigned recognizes that Mr. Padilla has objected to the decision to deny his request for leave to again amend his pleadings. [Dkt. 66.] That objection remains pending before the District Judge and will be ruled on in due course at the discretion of the District Judge.

contractual liability established against Huge Music Group by the Third Amended Complaint and the default judgment at issue. [Dkt. 44 at 7-8.] Although Mr. Padilla presented evidence concerning the studio's revenue, that evidence cannot expand the Court's existing liability determination to encompass obligations under the Second Agreement. Thus, the undersigned recommends no additional award for revenue sharing under the Second Agreement.

**E. Motion to Expedite and for Entry of Partial Final Judgment**

Mr. Padilla moved to expedite issuance of this Report and Recommendation and requests entry of partial final judgment against Huge Music Group under Federal Rule of Civil Procedure 54(b). [Dkt. 69.] He asserts that a limitations deadline in a related matter warrants prompt resolution. [*Id.* at 2.]

The issuance of this Report and Recommendation renders Mr. Padilla's request to expedite a ruling moot. **To be absolutely clear, the undersigned was already finalizing this Report and Recommendation on the day Mr. Padilla filed his Motion to Expedite, and his motion did not affect the timing of this decision or its outcome.** Mr. Padilla's request for partial final judgment is premature because the District Judge must first consider this Report and Recommendation, any timely filed objections, and determine the damages to be awarded against Huge Music Group. Accordingly, Mr. Padilla's Motion, [dkt. 69], is **DENIED AS MOOT** insofar as it requests expedited issuance of this decision and **DENIED AS PREMATURE** insofar as it requests entry of partial final judgment at this time.

## IV. CONCLUSION

Mr. Padilla's Motion to Expedite Issuance of Report and Recommendation and for Entry of Partial Final Judgment, [dkt. 69], is **DENIED AS MOOT IN PART and DENIED AS PREMATURE IN PART**.

For the reasons stated herein, the undersigned recommends that the Court enter judgment and award Mr. Padilla **$45,000 against Defendant Huge Music Group, LLC**, together with **simple prejudgment interest at 15% annually beginning November 3, 2023, through entry of final judgment**, with total interest calculated as of the date of the entry of judgment. The undersigned further recommends that the Court decline to award additional damages for expenditures or revenue sharing under the Second Agreement, since those damages are outside the scope of liability against Huge Music Group under the Third Amended Complaint on which default judgment was entered. Post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P 72(b). The failure to file objections **within 14 days** after service will constitute a waiver of subsequent review absent a showing of good cause for that failure. **Mr. Padilla should not anticipate any extension of this deadline or any other related briefing deadlines.**

**SO ORDERED.**

Date: 11/6/2026

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

JONATHAN PADILLA
12385 SW 51st Pl.
Cooper City, FL 33330